IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JASON ADAMS and
DONETTA ADAMS, his wife,

                Plaintiffs,

v.                                CIVIL ACTION NO.   3:22-0460

LITTLE GIANT LADDER SYSTEMS, LLC,
a Utah Limited Liability Company,

                Defendant.

**MEMORANDUM OPINION & ORDER**

The Court previously granted in part, denied in part, and held in abeyance in part Defendant's Motion for Summary Judgment (Def.'s Mot.), ECF No. 74. December 6, 2024 Mem. Op. & Order, ECF No. 103. The Court requested supplemental briefing on two of Defendant's arguments for summary judgment as to Plaintiffs' breach of warranty claim. *Id.*; December 20, 2024 Order, ECF No. 107. Upon review of Plaintiffs' Supplemental Brief (Pl.'s Supp. Br.), ECF No. 106, and Defendant's Response To Plaintiffs' Supplemental Brief Concerning Breach Of Warranty Claim (Def.'s Resp. to Pl.'s Supp. Br.), ECF No. 108,[1] the Court **DENIES** Defendant's Motion for Summary Judgment as to the breach of warranty claim.

---

[1] The Court heard oral argument on Plaintiffs' and Defendant's summary judgment motions on October 28, 2024. The Court also considered Defendant's Memorandum In Support Of Defendant Little Giant Ladder Systems, LLC's Motion For Summary Judgment (Def.'s Mem.), ECF No. 75; Plaintiffs' Memorandum Of Law In Support Of Plaintiffs' Renewed Motion To Exclude The Opinions And Testimony Of Dr. Ellen Wright And Motion For Summary Judgment (Pl.'s Mem.), ECF No. 78; Plaintiffs' Response In Opposition To Defendant Little Giant Ladder Systems, LLC's Motion For Summary Judgment (Pl.'s Resp.), ECF No. 80; Defendant's Response To Plaintiffs' Renewed Motion To Exclude The Opinions And Testimony Of Dr. Ellen Wright And Motion For Summary Judgment (Def.'s Resp.), ECF No. 82; Plaintiffs' Reply To Defendant,

## BACKGROUND

This is a products liability case involving an articulating (i.e., multi-position) ladder manufactured by Little Giant Ladder Systems, LLC. On November 10, 2021, Jason Adams fell from a Little Giant ladder and suffered injuries. Def.'s Mot., Ex. 2 (Adams Dep.) at 165-66. Adams asserts that he was using the ladder in the usual and ordinary manner when the rung on which he stood separated from the rest of the ladder. *Id.*

Jason Adams left high school after the 11th grade and did not pursue a GED. *Id.* at 19. He entered the construction industry immediately upon leaving high school. *Id.* From 2012 to the time of the accident, Adams worked as an independent contractor on construction projects. *Id.* at 25-27. He described himself as "a handyman, more or less." *Id.* at 36. He had no license and did not create a corporate entity for his business. *Id.* at 20, 25. In 2021, his income was $26,000. *Id.* at 26. Adams bought the subject ladder in 2017 at Ace Center Hardware in St. Albans, West Virginia. *Id.* at 69. He used it regularly "around the house or on jobs" until the accident. *Id.* at 107.

Before he bought the ladder at issue in this case, Adams had never purchased a Little Giant ladder but had some experience with them because his mother and stepfather had Little Giant ladders. *Id.* at 69. Adams occasionally worked with his stepfather on commercial construction projects. *Id.* at 22-23. Adams said he purchased the ladder because he "needed something a little bit lighter" and did not want to drive all the way to Nitro, where he was working at the time. *Id.* at 69. Defendant's corporate representative testified that the type of ladder at issue in this case is sold to many different kinds of people, including consumers and professionals. Def.'s Mot., Ex. 1 at

---

Little Giant Ladder Systems, LCC's, Brief In Opposition To Plaintiffs' Motion To Exclude The Opinions And Testimony Of Dr. Ellen Wright (Pl.'s Reply), ECF No. 84; and Defendant Little Giant Ladder Systems, LLC's Reply In Support Of Its Motion To For Summary Judgment (Def.'s Reply), ECF No. 85.

37-38.

Plaintiffs and Defendant each moved to exclude the opposing party's expert and for summary judgment. The Court granted the Defendant's motion to exclude Plaintiffs' expert and denied the Plaintiffs' motion to exclude Defendant's expert. November 13, 2024 Mem. Op. & Order, ECF No. 102. The Court denied Plaintiffs' motion for summary judgment. December 6, 2024 Mem. Op. & Order, ECF No. 103.

Defendant moved for summary judgment on Plaintiffs' counts of (I) Design and Manufacturing Defect based in negligence; (II) Strict Liability; (III) Breach of Warranty; and (IV) Punitive Damages. Def's Mot. at 1. The Court denied Defendant's motion for summary judgment as to the products liability claim insofar as Plaintiffs may proceed under the malfunction theory of strict products liability. December 6, 2024 Mem. Op. & Order, ECF No. 103. The Court granted Defendant's motion for summary judgment as to the punitive damages and failure to warn claims because Plaintiffs did not oppose summary judgment. *Id.* The Court rejected most of Defendant's arguments for summary judgment on the warranty claim but held in abeyance its decision on this claim in order to allow the parties to brief certain issues raised for the first time in Defendant's Reply. *Id.* Specifically, the Court ordered briefing on Defendant's arguments that (1) the limited warranty excluded consequential damages, including personal injury damages, to the extent permissible under state law, and (2) Plaintiffs' failure to return the ladder to Defendant's manufacturing facility for inspection prevents any warranty-related recovery. *Id.*

The parties provided several Little Giant warranties. Each warranty included the same language requesting the user return "your ladder to our manufacturing facility" and excluding "consequential or incidental damages, including but not limited to, personal injury or labor costs." *See* Def.'s Reply, Ex. 5; Pl.'s Resp., Ex. C at 1-2; Pl.'s Resp., Ex. C at 3-4; Def.'s Resp. to Pl.'s

Supp. Br., Ex. 2. The warranty that Defendant asserts accompanied the subject ladder is reproduced below.

> American Titan Ladders Limited Warranty
>
> We put our products through rigorous tests to ensure that your ladder is built to the highest standards. In the unlikely event that within the period of 25 years from the date of original purchase, there is a problem caused by defects in either workmanship or materials, we'll be happy to repair or replace, at our option and without cost to the original purchaser. **All we ask is that you return your ladder to our manufacturing facility.** If it is determined that the problem is covered by our warranty, we'll take care of the rest. All freight to and from the factory is to be paid by the customer. If a replacement is necessary and your product is no longer available, a comparable product will be substituted.
>
> American Titan Ladders are tested to withstand normal wear and tear, but are not indestructible and can be damaged by misuse. Our warranty, just like other warranties worldwide, will not cover wear and tear, misuse and/or abusive treatment. But we do ensure a timely resolution at a fair price. Misuse may include but is not limited to, damage by vehicles, tools, people, animals, falling objects, acts of God, and using American Titan ladders in any matter contrary to the warning/instruction labels and owner's manual.
>
> This shall be in lieu of any other warranty, express or implied, including, but not limited to, any implied warranty of merchantability or fitness for a particular purpose. The liability of American Titan under this warranty shall be limited solely to repair or replacement of the ladder within the warranty period; and **American Titan shall not be liable, under any circumstances, for consequential and incidental damages, including but not limited to, personal injury or labor costs. Some states do not permit the exclusion or limitation of incidental or consequential damages, so this exclusion may not apply to you**. This warranty gives you specific legal rights and you may have other legal rights, which may vary, from state to state. This warranty is effective as of June 21, 2006. Manufacturing specifications are subject to change without notice.
>
> The Little Giant accessories have a warranty of one year.

Def.'s Resp. to Pl.'s Supp. Br., Ex. 2 (emphasis added).

## STANDARD

To obtain summary judgment, the moving party must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc.*

*v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party has the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmovant is entitled to have his or her version of the facts accepted as true. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). The Court does not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). "Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute." *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, No. CIV.A. 2:04-1306, 2008 WL 906334, at *3 (S.D.W. Va. Mar. 31, 2008) (citing *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir.1991)).

## DISCUSSION

### A. Exclusion of Consequential Damages

Plaintiffs oppose summary judgment on the grounds that the exclusion of consequential damages is unconscionable and contrary to law. Pl.'s Supp. Br. at 1. This matter arose from a sale subject to Article 2 of the West Virginia Uniform Commercial Code (UCC), W. Va. Code, § 46-1101, *et seq*. Under the UCC, consequential damages include "(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property approximately resulting from any breach of warranty." W. Va. Code § 46-2-715(2).

In West Virginia, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." W. Va. Code § 46-2-719. Consumer goods are "goods that are used or bought for use primarily for personal, family or household purposes." W. Va. Code §§ 46-2–103, 46-9-102. The West Virginia UCC further provides:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

W. Va. Code § 46-2-302(1).

"Unconscionability is an equitable principle, and whether a provision is unconscionable is for the court to decide." *Appalachian Leasing, Inc. v. Mack Trucks, Inc.*, 765 S.E.2d 223, 231 (W. Va. 2014). In *Brown v. Genesis Healthcare Corporation*, the West Virginia Supreme Court of Appeals summarized the state common law doctrine of unconscionability:

> The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case. Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Undertaking an analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole. A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract.

729 S.E.2d 217, 226-27 (W. Va. 2012) (internal quotation marks, footnotes, and citations omitted). A contract term must be both procedurally and substantively unconscionable in order for the term to be unenforceable due to unconscionability. *Horizon Ventures of W. Va., Inc. v. Am. Bituminous*

*Power Partners, L.P.*, 857 S.E.2d 33, 40 (W. Va. 2021) (collecting cases). "Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." *Brown*, 729 S.E.2d at 227.

Procedural unconscionability is concerned with unfairness in the bargaining process that results in the lack of a real and voluntary meeting of the minds. *Id.* Factors to be considered include "the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." *Id.* Consumer transactions and contracts of adhesion receive greater scrutiny. *Id.* "Procedural unconscionability often begins with a contract of adhesion." *Id.* at 228. But courts must "distinguish[] good adhesion contracts which should be enforced from bad adhesion contracts which should not." *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 273 (W. Va. 2022) (internal quotation marks, citation, and footnote omitted).

Substantive unconscionability involves unfairness in the contract itself. *Id.* at 228. "[T]he West Virginia courts have made very clear the standard for substantive unconscionability under state law: A contract term is substantively unconscionable only if it is both 'one-sided' and 'overly harsh' as to the disadvantaged party." *McFarland v. Wells Fargo Bank, N.A.*, 810 F.3d 273, 279 (4th Cir. 2016) (citing *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 558 (W. Va. 2012); *Brown*, 729 S.E.2d at 221). "Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." *Berger*, 567 S.E.2d at 228.

Here, West Virginia Code § 46-2-719(3) does not provide the controlling standard because

Adams bought the ladder for a business purpose. Therefore, the Court must decide whether the term is unconscionable based on "an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." *Brown*, 729 S.E.2d at 226. The Court finds that this exclusion of consequential damages is unconscionable based on the facts and circumstances of this particular case.

The warranty at issue was a contract of adhesion. It accompanied the ladder, and Adams did not sign any document acknowledging its terms. Defendant asserts that the owner's manual contained the terms of the warranty. Def.'s Resp. to Pl.'s Supp. Br. at 2. Jason Adams testified that he read the owner's manual. Adams Dep. at 105. These circumstances are unlike those in "good" contracts of adhesion where courts reject claims of procedural unconscionability. For example, state and federal courts in West Virginia regularly reject arguments that arbitration agreements in contracts of adhesion are procedurally unconscionable. But in these cases, the customer either signs a contract acknowledging an unambiguous arbitration clause or fails to exercise a right to cancel after receiving an unambiguous arbitration clause. *See, e.g., Rent-A-Ctr., Inc. v. Ellis*, 827 S.E.2d 605, 609 (W. Va. 2019) (signed agreement); *Nationstar Mortg., LLC v. West*, 785 S.E.2d 634, 640 (W. Va. 2016) (signed agreement); *Clark v. Am. Mem'l Life Ins. Co.*, No. 2:21-CV-00399, 2021 WL 5235993, at *4 (S.D.W. Va. Nov. 10, 2021) (failed to cancel insurance policy). Here, the customer's purchase came with an ambiguous notice stating that the exclusion of consequential damages may or may not apply according to state law. *See* Def.'s Resp. to Pl.'s Supp. Br., Ex. 2.

Defendant relies on *Appalachian Leasing*, which involved two sophisticated businesses and a "Standard Warranty" in the sale documents for a $670,000 transaction. 765 S.E.2d at 225. In that case, the West Virginia Supreme Court of Appeals cast doubt upon a coal hauling company's assertion that certain disclaimers of warranties were unconscionable because its

business was substantial and there was no disparity of bargaining power. *Id.* at 231. The facts here are different. Jason Adams did not have a high school education or GED. Adams Dep. at 19. He never obtained a license or incorporated his business. *Id.* at 20, 25. He bought the ladder at a hardware store for less than $300. *Id.* at 69, 72. His lack of education and the unsophisticated nature of his business weigh toward a finding of procedural unconscionability. The Court further finds that the manner and setting of the transaction—here, purchasing the ladder at a retail store and receiving the warranty alongside the ladder—weigh toward a finding of procedural unconscionability. Although this is not a case of severe procedural unconscionability, there is sufficient procedural unconscionability for the Court to consider substantive unconscionability under the "sliding scale" standard. *See Brown*, 729 S.E.2d at 227.

The Court finds that the exclusion of consequential damages is one-sided and overly harsh to Plaintiffs. The express warranty promises that under ordinary use the ladder will not fail due to defects in either workmanship or materials. If Defendant's product does not live up to that promise, there is an obvious risk that the ladder fails while in use and its user is injured. The exclusion of consequential damages shifts that risk from Defendant to Defendant's customers. If Jason Adams bought the ladder for use around his home, instead of for use around his home and as a handyman, it would be Defendant's burden to show that this term was not unconscionable. *See Martin v. Am. Med. Sys., Inc.*, 116 F.3d 102, 105 (4th Cir. 1997); *Matthews v. Ford Motor Co.*, 479 F.2d 399, 402 (4th Cir. 1973).

This set of facts presents a rare case where a business purchaser closely resembles an ordinary consumer, and comparable fairness concerns apply. *See generally* 1 James J. White, Robert S. Summers, & Robert A. Hillman, *Uniform Commercial Code* § 5:3 (6th ed. Aug. 2024 Update) ("The few 'business' buyers who get to first base with an unconscionability claim are

invariably small—usually solo-operators such as the owner of a gas station or a farmer—i.e., 'businesses' that look like consumers."). If Defendant produces defective ladders, and as a result a consumer or a handyman falls and suffers injury, it is overly harsh and one-sided for the injured person to be limited to the remedy of repair or replacement. Thus, the Court finds that the exclusion of consequential damages is unenforceable due to unconscionability.

Defendant argues that *Appalachian Leasing* held "that when a warranty limits the available remedies to repair or replacement of defective parts in a non-consumer purchase, arguments concerning unconscionability of the warranty terms are <u>only</u> at issue if the purchaser has shown that the warranty failed of its essential purpose." Def.'s Resp. to Pl.'s Supp. Br. at 6-7. Defendant misreads this case. *Appalachian Leasing* explained that "where an express warranty fails of its essential purpose . . . the seller's exclusion of consequential damages from the express warranty remains in effect, unless the exclusion is unconscionable." 765 S.E.2d at 232. These are two separate questions: whether an express warranty fails of its essential purpose, and whether an exclusion of consequential damages is unconscionable. *Id.* at 231-32; *see also Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F. Supp. 1027, 1045 (D.S.C. 1993), *aff'd*, 46 F.3d 1125 (4th Cir. 1995) (collecting cases). Defendant's argument fails.

### B. Requirement to Return Ladder to Manufacturing Facility

Defendant argues that Plaintiffs' failure to return the ladder to Defendant's manufacturing facility for inspection prevents any warranty-related recovery. Def.'s Reply at 15. Defendant concedes the existence of an express warranty. Def.'s Resp. to Pl.'s Supp. Br. at 11. Defendant argues that Plaintiffs cannot show a breach of the warranty because Defendant can only breach its warranty by failing to repair or replace the ladder, and Plaintiffs did not give Defendant the opportunity to repair the ladder. *Id.*

Plaintiffs argue that cooperating with the Defendant to allow its expert to examine and engage in destructive testing of the ladder was substantial compliance with the warranty. Pl.'s Supp. Br. at 9-10. They emphasize that Jason Adams was injured during the alleged ladder malfunction and immediately sought medical care, which involved multiple surgeries and subsequent recovery time. *Id.*; *see also* Adams Dep. at 131-32, 209-10. They further emphasize that Defendant was not prejudiced in any way by Plaintiffs' failure to return the ladder to Defendant's manufacturing facility because Defendant's expert performed destructive testing and "obtained reams of information about the ladder." Pl.'s Supp. Br. at 10-13.

Jason Adams testified in his deposition that he was taken to the hospital immediately after the accident and did not see the ladder until weeks later. *Id.* at 204-13. Adams said his friend, Jeremy Childers, stored the ladder until Adams left the hospital. *Id.* at 205-08. Defendant does not assert that Plaintiffs were required to send the ladder back to Defendant's manufacturing facility immediately after the accident. Rather, Defendant emphasizes that it had no notice of the alleged malfunction until this suit was filed, nearly two years after the accident. Def.'s Resp. to Pl.'s Supp. Br. at 11-16.

Further, Defendant argues that West Virginia Code § 46-2-607(3)(a) "bars a buyer from bringing a claim for breach of warranty without first notifying the seller of the breach, so the seller may cure the breach, if any, before being required to defend an unnecessary lawsuit." *Id.* at 12. Indeed, where a buyer has accepted tender of goods, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." W. Va. Code § 46-2-607(3)(a).

To support this argument, Defendant cites a case involving a worker who suffered injuries due to a defective steel pipe and brought claims for strict liability and breach of the implied

warranty of fitness. *Hill v. Joseph T. Ryerson & Son, Inc.*, 268 S.E.2d 296, 299 (W. Va. 1980). The worker sued the warehouse supplier, and the manufacturer was a third-party defendant. *Id.* The manufacturer argued the warehouse supplier failed to give the manufacturer timely notice of the worker's injury as required by West Virginia Code § 46-2-607(3)(a). *Id.* at 302. The West Virginia Supreme Court of Appeals "conclude[d] that W.Va. Code, 46-2-607(3)(a), relating to the requirement of notice where the goods breach the contract of sale, is not available as a defense in a product liability action for personal injuries or in a related suit for implied indemnity." *Id.* at 305. The court explained:

> This Code section has little relevance to the product liability field, where the injured buyer is not seeking to rescind the sales contract and avoid paying the purchase price for the product, but is attempting to recover damages for personal injuries caused by the product. . . . We believe that the notice requirement of W. Va.Code, 46-2-607(3) (a), is applicable to the ordinary commercial transaction where the buyer is seeking to avoid the contract price because the goods are not acceptable, and this Code section should not be extended into the product liability field.

*Id.* at 302-03. However, the *Hill* court cautioned that "[t]his does not mean that in appropriate cases the Uniform Commercial Code cannot be utilized for guidance in product liability cases, particularly where express warranties or other features peculiar to the particular commercial transactions are involved." *Id.* at 305. The other cases cited by Defendant do not involve buyers who suffered personal injuries.

The notice requirement of § 46-2-607(3)(a) serves several purposes. "The purpose of enabling the seller to cure the defect has significance in a commercial setting but has no significance in a personal injury case because the defect has already caused the harm and the seller can do nothing to remedy the situation that has already occurred." Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 2-607:6 (3d. ed.) (footnote omitted). Additional purposes include "alerting the seller to the need for gathering evidence in preparation for trial or negotiation," "protect[ing] against stale claims," and "the general social purpose of informing

manufacturers of the need for making improvements to avoid further injuries." *Id.*

The Official Comment to this section of the Uniform Commercial Code provides further guidance on the purpose of the notice requirement and the standard for determining whether notice was provided "within a reasonable time." It states:

> The time of notification is to be determined by applying commercial standards to a merchant buyer. 'A reasonable time' for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.

UCC § 2-607, cmt. 4.[2] Jason Adams was not a merchant buyer because he did not deal in ladders as part of his business or have knowledge or skill peculiar to ladders. *See* W. Va. Code § 46-2-104 (defining merchant as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction" or a person who uses an intermediary with such knowledge or skill). Yet, this was not a consumer goods transaction. *See* W. Va. Code §§ 46-2–103, 46-9-102. Defendant does not argue that Plaintiffs' failure to notify Defendant of this injury was motivated by bad faith. *See* Def.'s Resp. to Pl.'s Supp. Br. at 11-16.

At this stage, Defendant has not shown that there is no dispute of material fact as to whether Plaintiffs failed to provide notice of the injury within a reasonable time. The Court notes that, under *Hill*, Plaintiffs may not have been required to give notice prior to filing this lawsuit. 268 S.E.2d at 302-05; *see also Cole v. Keller Indus., Inc.*, 132 F.3d 1044, 1048 (4th Cir. 1998) (holding apartment maintenance man who fell from a ladder purchased by his employer was not required

---

[2] The West Virginia Supreme Court of Appeals relies on the official commentary in interpreting the state's Uniform Commercial Code. *See, e.g., SER Monongahela Power Co. v. Fox*, 711 S.E.2d 601, 605 (W. Va. 2011).

under Virginia Code § 8.2-607 to give notice to the manufacturer before bringing a warranty claim for personal injuries).

There is no evidence in the record that, after Plaintiffs filed this suit, Defendant demanded Plaintiffs send the ladder to Defendant's manufacturing facility. Defendant's expert's report states that the ladder was inspected at an Engineering Systems, Inc. facility in Aurora, Illinois on May 12, 2023. Def.'s Resp., Ex. 5, at 7. Engineering Systems Inc. was retained by Defendant's counsel. *Id.* at 3. Defendant's expert and a representative for the Plaintiffs attended the inspection. "The subject ladder was made available for examination." *Id.* at 7. Defendant has not shown that there is no dispute of material fact as to whether Plaintiffs complied with the terms of the warranty.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment, ECF No. 74, as to Plaintiffs' breach of warranty claim.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

        ENTER:    February 3, 2025

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE